**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   JAMES R. ODLE,                           No. C 05-2711 MMC

12           Plaintiff,                       **ORDER GRANTING DEFENDANTS'
                                             MOTION FOR SUMMARY JUDGMENT**
13      v.
                                             (Docket No. 27)
14   DEPARTMENT OF JUSTICE;
     DEPARTMENT OF JUSTICE OFFICE OF
15   PROFESSIONAL RESPONSIBILITY,

16           Defendants.
     _____/
17

18       Before the Court is the motion for summary judgment filed November 7, 2005 by

19   defendants United States Department of Justice ("DOJ"), and the DOJ Office of

20   Professional Responsibility ("OPR").  Plaintiff James R. Odle ("Odle") has filed opposition to

21   the motion, to which defendants have replied; with the Court's permission, Odle has filed a

22   surreply.  For the reasons set forth below, the Court GRANTS the motion.

23                                   **BACKGROUND**

24       Odle brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

25   § 552 et seq., to obtain certain documents from defendants.  In 1983, Odle was tried and

26   convicted of two first degree murders and sentenced to death.  See Odle v. Woodford, 238

27   F.3d 1084, 1086 (9th Cir. 2001).  In 2001, the Ninth Circuit held, on habeas review, that the

28   state court denied Odle due process by failing to conduct a competency hearing at his 1983

1  trial, but found the state court could cure the error by conducting, if possible, a retroactive

2  competency hearing.  See id. at 1090.  Odle alleges the state court, relying solely on the

3  testimony of Daniel A. Martell ("Dr. Martell"), a forensic psychologist, determined that a

4  retroactive competency hearing is feasible.  (See Compl. ¶ 2.)

5          On September 3, 2004, Odle submitted a FOIA request for all documents in

6  defendants' possession "relating to the investigation of the government's potential witness,

7  Daniel Martell[,] in the matter of U.S.A. v. Everett Edward Spivey, crim. No. 95-491, in the

8  United States District Court for the District of New Mexico by the Department of Justice and

9  its Office of Professional Responsibility"; on March 7, 2005, Odle submitted a further FOIA

10  request seeking all documents "relating to Dr. Martell's actions and statements" in the

11  Spivey case.  (See Hall Decl. ¶¶ 26, 33 and Exs. G and J.)  According to a letter dated May

12  8, 1997 and signed by United States Attorney John J. Kelly, Dr. Martell, during a dinner

13  party, is alleged to have revealed to the prosecuting attorneys in the Spivey case, in

14  violation of a court order, "one portion" of his mental examination of Spivey.  (See Forbes

15  Decl. ¶ 2 and Ex. A.)  In particular, Dr. Martell is alleged to have revealed Spivey's "fixation"

16  on a female Assistant United States Attorney, and that Spivey would neither allow the

17  mental examination to be taped nor discuss the crimes alleged in the indictment.  (See id.

18  Ex. A at 2.)  Odle alleges that Dr. Martell subsequently was removed from "numerous other

19  death penalty cases for which he had been contracted by the DOJ, and his actions in the

20  [Spivey] case were reviewed by [the] DOJ and referred to the OPR for investigation."  (See

21  Compl. ¶ 16; see also Forbes Decl. Ex. A at 4 (noting Dr. Martell's services were "no longer

22  required" in three capital cases pending in District of New Mexico).)

23          In response to each of Odle's FOIA requests, defendants initially asserted a "Glomar

24  response,"[1] refusing to confirm or deny the existence of any responsive records, and

25  stating that to do so would be an invasion of Dr. Martell's privacy.  (See Hall Decl. ¶¶ 31, 36

26  _____

27          [1] The term "Glomar response" refers to Phillippi v. Central Intelligence Agency, 546
    F.2d 1009 (D.C.Cir. 1976), in which the Central Intelligence Agency, in response to a FOIA
28  request, refused to confirm or deny the existence of documents relating to a ship, the
    Hughes Glomar Explorer.

and Exs. I and K.)  On July 1, 2005, Odle filed the instant action, seeking a court order requiring defendants to disclose the requested records.  (See Compl. at 7.)

On July 20, 2005, defendants, prior to filing an answer to Odle's complaint, provided to prosecutors in Commonwealth of Virginia v. Atkins, No. CR-03-R2-8229-01 (Va. Cir. Ct.), a redacted report of OPR's investigation of alleged misconduct in the Spivey case, pursuant to 5 U.S.C. § 552a(b)(7).[2]  (See Hall Decl. ¶ 41.)  According to Dale K. Hall ("Hall"), a Freedom of Information Specialist with OPR, the above-referenced disclosure was the first official public acknowledgment by the DOJ of OPR's investigation of the alleged misconduct in the Spivey case.  (See id.)  As a result of such disclosure, Hall attests, "OPR determined that it was no longer appropriate to assert a Glomar response" to Odle's FOIA request for documents pertaining to Dr. Martell.  (See id. ¶ 43.)  Thereafter, in the instant action, OPR confirmed the existence of such records in its answer, filed August 8, 2005, and began to conduct a review of documents to determine which documents were responsive to Odle's FOIA request.  (See id.)

On August 26, 2005, Odle filed a motion for summary judgment on the ground defendants improperly asserted a Glomar response to his FOIA requests and that the requested documents are not exempt from disclosure.  In an order filed September 22, 2005, the Court denied the motion as moot in light of defendants' withdrawal of their Glomar response, and as premature to the extent the motion was based on defendants' unlawful withholding of documents.  (See Order Denying Plaintiff's Motion for Summary Judgment, filed September 22, 2005, at 3-4.)  The Court ordered defendants to produce all responsive documents, as well as to serve a Vaughn index[3] with respect to any withheld

---

[2] The government may disclose to a law enforcement agency, upon the written request of the head of the agency, information that is protected by the Privacy Act.  See 5 U.S.C. § 552a(b)(7).

[3] A Vaughn index, derived from Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), is a list "identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption."  See Wiener v. Federal Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991).

documents and to file a motion for summary judgment as to any withheld documents, all by October 21, 2005.  (See id. at 5.)

Hall attests he identified 840 documents responsive to Odle's FOIA request,[4] of which 597 documents were duplicates that were removed from further processing.  (See Hall Decl. ¶ 48.)  Of the remaining 243 documents, 67 documents were referred to the Executive Office for United States Attorneys ("EOUSA") and six documents were referred to the Criminal Division, in each instance "for review and direct response to the plaintiff." (See id. ¶ 48(c).)  Of the 170 documents thereafter remaining, OPR produced to Odle 23 documents in their entirety, consisting of 318 pages, (see id. ¶ 48(d); see also Forbes Decl. ¶ 3), and 36 documents in part, consisting of 181 pages of redacted material, (see Hall Decl. ¶ 48(e); see also Forbes Decl. ¶ 4).  OPR withheld 111 documents in their entirety, consisting of 1670 pages.  (See Hall Decl. ¶ 48(f); see also Opp. at 1.)  Of the 67 documents referred to EOUSA, constituting 418 pages of material, 19 pages were released to Odle in their entirety, 397 pages were withheld in their entirety, and two pages were determined to be nonresponsive to Odle's FOIA request.  (See Boseker Decl. ¶ 7.)  All six of the documents referred to the Criminal Division were released to Odle in their entirety. (See Hall Decl. ¶ 48(c).)

**LEGAL STANDARDS**

**A.  Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(b), (c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

---

[4] Odle does not challenge the adequacy of Hall's search for responsive documents.

1  reasonable jury to return a verdict for the nonmoving party.  See id.  The Court may not

2  weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be

3  believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  See

4  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)

5  (en banc) (citing Liberty Lobby, 477 U.S. at 255).

6       The moving party bears the initial responsibility of informing the district court of the

7  basis for its motion and identifying those portions of the pleadings, depositions,

8  interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the

9  absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

10  323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving

11  party's burden is discharged when it shows the court there is an absence of evidence to

12  support the nonmoving party's case.  See id. at 325.

13       Where the moving party "bears the burden of proof at trial, he must come forward

14  with evidence which would entitle him to a directed verdict if the evidence went

15  uncontroverted at trial."  See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)

16  (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986)

17  (holding when plaintiff moves for summary judgment on an issue upon which he bears the

18  burden of proof, "he must establish beyond peradventure all of the essential elements of

19  the claim . . . to warrant judgment in his favor.") (emphasis in original).

20       A party opposing a properly supported motion for summary judgment "may not rest

21  upon the mere allegations or denials of [that] party's pleading, but . . .  must set forth

22  specific facts showing that there is a genuine issue for trial."  See Fed. R. Civ. P. 56(e); see

23  also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show the issue will be

24  resolved conclusively in its favor.  See Liberty Lobby, 477 U.S. at 248-49.  All that is

25  necessary is submission of sufficient evidence to create a material factual dispute, thereby

26  requiring a jury or judge to resolve the parties' differing versions at trial.  See id.

27  **B. FOIA**

28       FOIA "was intended to establish a general philosophy of full agency disclosure, and

to close the loopholes which allow agencies to deny legitimate information to the public[.]"

See GTE Sylvania, Inc. v. Consumers Union of the United States, 445 U.S. 375, 385

(1980) (internal quotations and citations omitted).  In accordance with those goals, FOIA

provides that "each agency, upon any request for records which (A) reasonably describes

such records and (B) is made in accordance with published rules stating the time, place,

fees (if any), and procedures to be followed, shall make the records promptly available to

any person."  See 5 U.S.C. § 552(a)(3).

Nine specific categories of records are exempt from disclosure.  See 5 U.S.C.

§ 552(b).  "[U]nless the requested material falls within one of these nine statutory

exemptions, FOIA requires that records and material in the possession of federal agencies

be made available on demand to any member of the general public."  NLRB v. Robbins Tire

and Rubber Co., 437 U.S. 214, 221 (1978).  The exemptions "have been consistently given

a narrow compass," see United States Department of Justice v. Tax Analysts, 492 U.S.

136, 151 (1989), and agency records that "do not fall within one of the exemptions are

improperly withheld," see id. (internal quotation omitted).  If only a portion of a record is

exempt from disclosure, the agency must disclose the non-exempt portion if it is

"reasonably segregable."  See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a

record shall be provided to any person requesting such record after deletion of the portions

which are exempt").

The district court has "jurisdiction to enjoin the agency from withholding agency

records and to order the production of any agency records improperly withheld from the

complainant."  See 5 U.S.C. § 552(a)(4)(B).  "Unlike the review of other agency action that

must be upheld if supported by substantial evidence and not arbitrary or capricious, the

FOIA expressly places the burden 'on the agency to sustain its action' and directs the

district courts to 'determine the matter de novo.'"  United States Dept. of Justice v.

Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting

§ 552(a)(4)(B)); see United States Department of Justice v. Tax Analysts, 492 U.S. at 142

n.3 (observing that placing burden of proof upon agency puts task of justifying withholding

of records on only party able to explain it).

## DISCUSSION

In their motion for summary judgment, defendants argue that all documents responsive to Odle's FOIA requests, and not already produced to him, were appropriately withheld under various exemptions.

### A. Adequacy of Vaughn Indices

As an initial matter, Odle contends that the Vaughn indices produced by defendants are insufficiently detailed to permit Odle or the Court to determine whether any of the documents at issue were improperly withheld.[5]

As noted, a Vaughn index is a list "identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." See Wiener, 943 F.2d at 977. "The purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." Id. (internal quotation and citation omitted). "Unless the agency discloses as much information as possible without thwarting the claimed exemption's purpose, the adversarial process is unnecessarily compromised." Id. at 979 (internal quotation and citation omitted). Although the government "may not rely upon conclusory and generalized allegations of exemptions," it "need not specify its objections in such detail as to compromise the secrecy of the information." See Church of Scientology of California v. United States Dept. of the Army, 611 F.2d 738, 742 (9th Cir. 1980). Nonetheless, where Vaughn indices "are conclusory, merely reciting statutory standards, or if they are too vague or sweeping," the government's motion for summary judgment must be denied. See King v. United States Department of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987).

---

[5] The Vaughn indices produced by OPR and EOUSA, respectively, appear at Exhibit U to the Hall Declaration, and Exhibit B to the Boseker Declaration.

1   Because the detail required in a <u>Vaughn</u> index depends on the specific exemption

2   claimed, <u>see</u> <u>Wiener</u>, 943 F.2d at 979, the Court will address Odle's objections to the

3   <u>Vaughan</u> indices in connection with the Court's discussion of the specific exemptions upon

4   which defendants rely.[6]

5   **B.  Exemption 7(C)**

6   FOIA Exemption 7(C) exempts from disclosure "records or information compiled for

7   law enforcement purposes, but only to the extent that the production of such law

8   enforcement records or information . . . could reasonably be expected to constitute an

9   unwarranted invasion of personal privacy."  <u>See</u> 5 U.S.C. § 552(b)(7)(C).  The majority of

10  the documents withheld by defendants, in whole or in part, were withheld pursuant to

11  Exemption 7(C).  (<u>See</u> Hall Decl. Ex. U; Boseker Decl. Ex. B.)

12  **1.  Law Enforcement Purpose**

13  The first question in determining the applicability of Exemption 7(C) is whether "the

14  withheld record was compiled for law enforcement purposes."  <u>See</u> <u>Rosenfeld v. United</u>

15  <u>States Dept. of Justice</u>, 57 F.3d 803, 808 (9th Cir. 1995).  "An agency which has a clear

16  law enforcement mandate, such as the FBI, need only establish a 'rational nexus' between

17  enforcement of a federal law and the document for which an exemption is claimed."  <u>See</u>

18  <u>Church of Scientology</u>, 611 F.2d at 748.  Where, however, an agency "has a 'mixed'

19  function, encompassing both administrative and law enforcement functions, [it] must

20  demonstrate that it had a purpose falling within its sphere of enforcement authority in

21  compiling the particular document."  <u>See</u> <u>id.</u> Put another way, the agency must show the

22  records in question were compiled "for adjudicative or enforcement purposes."  <u>See</u> <u>id.</u>

23  (citing <u>Rural Housing Alliance v. United States Dept. of Agriculture</u>, 498 F.2d 73, 80 (D.C.

24  Cir. 1974)).  "[I]f the investigation is for a possible violation of law, then the inquiry is for law

25  enforcement purposes, as distinct from customary surveillance of the performance of duties

26

27  _____

28  [6] The Court discusses the applicability of the various FOIA exemptions in the order discussed by defendants in their motion for summary judgment.

8

1   by government employees."  <u>Jefferson v. Department of Justice, Office of Professional</u>

2   <u>Responsibility</u>, 284 F.3d 172, 177 (D.C. Cir. 2002) (distinguishing between "(1) files in

3   connection with government oversight of the performance of duties by its employers, and

4   (2) files in connection with investigations that focus directly on specific alleged illegal acts

5   which could result in civil or criminal sanctions").  "Material compiled in the course of . . .

6   internal agency monitoring does not come within Exemption 7(C) even though it might

7   reveal evidence that later could give rise to a law enforcement investigation."  <u>See</u>

8   <u>Kimberlin v. Department of Justice</u>, 139 F.3d 944, 947 (D.C. Cir. 1998) (holding Exemption

9   7(C) "does not exempt from disclosure . . . internal agency investigations . . . in which an

10  agency, acting as the employer, simply supervises its own employees").

11                                    **a. OPR**

12         OPR is "a mixed function agency with responsibilities that embrace not only

13  investigations of violations of law and breaches of professional standards that may result in

14  civil liability, but breaches of internal Department guidelines that may lead to disciplinary

15  proceedings as a result of the receipt of reports of investigations by other entities of such

16  non-law violations."  <u>See</u> <u>Jefferson v. Department of Justice, Office of Professional</u>

17  <u>Responsibility</u>, 284 F.3d 172, 179 (D.C. Cir. 2002) (internal citations omitted).

18  Consequently, defendants have the burden of demonstrating the records in question were

19  compiled "for adjudicative or enforcement purposes."  <u>See</u> <u>Church of Scientology</u>, 611 F.2d

20  at 748; <u>see also</u> <u>Jefferson</u>, 284 F.3d at 178 ("[W]e decline to hold as a matter of law that all

21  OPR records are necessarily law enforcement records.").

22         Here, Hall, in his initial declaration, does not attest that the investigation of the

23  <u>Spivey</u> incident was for purposes of determining whether Dr. Martell, or anyone else,

24  engaged in "specific alleged illegal acts which could result in civil or criminal sanctions."

25  <u>See</u> <u>Jefferson</u>, 284 F.3d at 177.  Rather, Hall attests generally that because OPR "is

26  focused on investigating non-frivolous allegations of professional misconduct by DOJ

27  attorneys and law enforcement personnel, most records maintained by OPR are compiled

28

                                        9

1  for law enforcement purposes," (see Hall Decl. ¶ 16), and that he "determined there were

2  several allegations of a non-frivolous and serious nature that if proven true could result in

3  court sanctions, criminal prosecution and civil liability to those found in violation," (see id.

4  ¶ 45).  Defendants cannot, however, "rely on a bare assertion to justify invocation of an

5  exemption from disclosure."  See Jefferson, 284 F.3d at 178 (noting not all OPR records

6  are necessarily law enforcement records); see also Wiener, 943 F.2d at 985-86 (holding

7  Vaughn index stating individual was being investigated for possible violation of two criminal

8  statutes, described by Ninth Circuit as "very broad" in nature, insufficient where plaintiff

9  submitted evidence that claimed law enforcement purpose was pretextual).

10          In connection with defendants' reply, however, Hall submitted a supplemental

11  declaration that provides more detail.  In particular, Hall attests that "[t]he potential

12  allegations involved in OPR's investigation of the Spivey case included misrepresentation

13  to the court, violation of a court order, misrepresentation to defense counsel, subornation of

14  perjury, and failure to correct false testimony."  (See Hall Supp. Decl. ¶ 8.)  Hall further

15  states that "Dr. Martell was not the subject of OPR's investigation in the Spivey case";

16  rather, "[t]he purpose of OPR's investigation of alleged misconduct in the Spivey case was

17  to determine whether any DOJ employee committed misconduct in the handling of the

18  Spivey prosecution."  (See id. ¶ 9.)  There is no evidence to the contrary.

19          Accordingly, the Court finds the instant records of OPR's investigation into the

20  Spivey matter were compiled for law enforcement purposes.  See, e.g., Kimberlin, 139 F.3d

21  at 947 (holding records of OPR investigation as to whether Assistant United States

22  Attorney violated law by releasing to press certain information about prior investigation by

23  Drug Enforcement Administration were compiled for law enforcement purposes).

24                              **b.  EOUSA**

25          Odle questions, in a footnote, whether the documents withheld by EOUSA were

26  compiled for law enforcement purposes.  Odle argues that EOUSA does not have a clear

27  law enforcement mandate because, as defendants acknowledge, EOUSA "provides the 94

28

U.S. Attorneys Offices with general executive assistance and direction, policy development, administrative management direction and oversight, operational support, coordination with other components of the DOJ and other federal agencies." (See Boseker Decl. at 1 n.1.) John F. Boseker, an attorney advisor in EOUSA, attests, however, that the documents withheld by EOUSA "pertained to or were derived from one or more third party individual criminal prosecutions, and thus were created for law enforcement purposes." (See Boseker Decl. ¶ 9.) There is no evidence to the contrary.

Accordingly, the Court finds the documents withheld by EOUSA were compiled for law enforcement purposes.

**2. Balancing of Privacy and Public Interests**

Once the government meets its burden of demonstrating the records in question were compiled for law enforcement purposes, the district court must "balance the privacy interests of the individuals protected by the nondisclosure against the public interest at stake." See Rosenfeld, 57 F.3d at 811 (citing Reporters Committee, 489 U.S. at 762). "The sole cognizable public interest for FOIA is the interest 'to open agency action to the light of public scrutiny,' to inform the citizenry 'about what their government is up to.'" See id. at 811 (quoting Reporters Committee, 489 U.S. at 772, 773). "[W]hether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made" or "the identity of the requesting party." See Reporters Committee, 489 U.S. at 771.

Defendants first argue that because the withheld records relate to, or are about, third-party individuals, they are covered by the protections of the Privacy Act, which generally precludes disclosure of such records except at the written request of, or with the prior written consent of the individual to whom the record pertains. See 5 U.S.C. § 552a(b). Defendants argue that Odle has not submitted written consent from any third party. Defendants concede, as they must, however, that the Privacy Act expressly provides that documents that are required to be disclosed under FOIA are not subject to the requirements of the Privacy Act. See 5 U.S.C. § 552a(b)(2); see also United States Dept.

11

of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 491 (1994) (noting Privacy Act's exception for material required to be disclosed under FOIA).  Accordingly, any failure by Odle to comply with the requirements of the Privacy Act is immaterial if the records in question are required to be disclosed under FOIA.

Defendants further argue that OPR properly withheld under FOIA "the names and other personal identifying information concerning third party individuals and the names of low-level OPR employees."  (See Hall Decl. ¶¶ 48(e)(v), 48(f)(iv), and Exs. Q and S.) Defendants argue that "the disclosure of the names and other identifying information about the third-party individuals could result in them being publicly associated with possible criminal behavior and have a stigmatizing effect on their personal and professional character" and that "the disclosure of low-level OPR employees could result in unwarranted public scrutiny and potential harassing telephone calls to elicit sensitive investigative information."  (See id. ¶ 55.)  Defendants further argue that "the disclosure of the names and other personal identifying information about the third-party individuals and low-level employees would not shed light on OPR's performance of its statutory duties."  (See id.)

Courts have repeatedly held that individuals have a privacy interest in the secrecy of information linking them to law enforcement investigations, and have noted, for example, that "disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm."  See King, 830 F.2d at 233; see also Hunt v. FBI, 972 F.2d 286, 288 (9th Cir. 1992) ("A government employee generally has a privacy interest in any file that reports on an investigation that could lead to the employee's discipline or censure.").  Moreover, "other persons involved in the investigation – witnesses, informants, and investigating agents – also have a substantial interest in seeing that their participation remains secret," as do "[t]hird parties discussed in investigative files."  See King, 830 F.2d at 233; see also Hunt, 972 F.2d at 288 ("[I]nvestigators have a privacy interest in not being identified with particular investigations."); Safecard Services, Inc. v. Securities and Exchange Commission, 926 F.2d 1197, 1205 (D.C. Cir. 1991) ("Exemption 7(C) affords broad privacy rights to suspects,

1   witnesses and investigators."). Accordingly, defendants have adequately demonstrated

2   that persons involved in OPR investigation have a privacy right in nondisclosure of their

3   involvement therein.

4       "Where the privacy concerns addressed by Exemption 7(C) are present, the

5   exemption requires the persons requesting the information to establish a sufficient reason

6   for the disclosure." National Archives and Records Administration v. Favish, 541 U.S. 157

7   (2004). The person requesting the information must make the following showing:

8       First, the citizen must show that the public interest sought to be advanced is a
        significant one, an interest more specific than having the information for its
9       own sake. Second, the citizen must show the information is likely to advance
        that interest. Otherwise, the invasion of privacy is unwarranted.
10

11  See id. Here, Odle argues that the public has an interest "in the fact that Dr. Martell and

12  the AUSA's and other government agents mentioned by name in OPR's files are alleged to

13  have violated a court order in a federal death-penalty prosecution, thereby infringing the

14  constitutional rights of a criminal defendant, calling into question the ability of the DOJ and

15  its agents and employees to competently and lawfully perform their duties, and raising

16  significant questions as to the integrity of a mental health expert still currently used by the

17  government in federal criminal prosecutions." (See Opp. at 23.)

18      Where, as here, the public interest asserted is in the disclosure of improper

19  performance of official duties, "the requester must produce evidence that would warrant a

20  belief by a reasonable person that the alleged Government impropriety might have

21  occurred." See Favish, 541 U.S. at 174. Because "there is a presumption of legitimacy

22  accorded to the Government's official conduct, . . . clear evidence is usually required to

23  displace it." See id. Odle, in his opposition, does not attempt to demonstrate that any

24  impropriety actually occurred in connection with the Spivey matter. Indeed, in an order filed

25  April 28, 1997, and submitted by Odle, the United States District Court for the District of

26  New Mexico noted that "[w]hile acknowledging that counsel did speak to Dr. Martell, the

27  Government claims that at no time did Dr. Martell disclose any information he obtained

28  during his examination of SPIVEY to the Government." (See Forbes Decl. Ex. H at 9 (U.S.

13

1    v. Spivey, Criminal No. 95-0491 LH, slip op. at 9 (D.N.M. Apr. 28, 1997)).  The court held

2    "the record supports the Government's version of the communication between Government

3    counsel and Dr. Martell," see id., and was "satisfied that the Government has not

4    improperly exposed itself to Mr. Spivey's court-ordered psychiatric testimony with Dr.

5    Martell," (see id. at 13).

6         Moreover, the records at issue, if disclosed, would shed little light on the ability of the

7    DOJ and its employees to competently perform their duties.  The Ninth Circuit has held, for

8    example, that a file concerning an investigation into the conduct of a single FBI agent was

9    properly withheld from disclosure under Exemption 7(C) because "disclosure would not

10   advance any significant public interest."  See Hunt, 972 F.2d at 287.  In that case, the

11   investigation had been triggered by the plaintiff's complaint that the FBI agent in question,

12   with whom the plaintiff had become romantically involved, had induced him to waive his

13   right to counsel and accept an unwise plea bargain.  See id. at 287, 288.  The Ninth Circuit,

14   noting FOIA "is aimed at subjecting governmental activity to public scrutiny while protecting

15   individual privacy," held that "[t]he single file sought by [the plaintiff] will not shed any light

16   on whether all such FBI investigations are comprehensive or whether sexual misconduct by

17   agents is common."  See id. at 289.  The Ninth Circuit further noted that the public has a

18   greater interest in disclosure of investigations of malfeasance by high ranking public

19   officials than in investigations of lower-level government employees such as the FBI agent

20   in question, see id. at 289, and held that "[w]here there is no evidence that the government

21   has failed to investigate adequately a complaint, or that there was wrongdoing on the part

22   of a government employee the public interest in disclosure is diminished," see id.  In

23   balancing the privacy interests at issue against the public interest in disclosure, the Ninth

24   Circuit concluded:  "[K]ey factors militate strongly against disclosure: [the plaintiff's]  FOIA

25   request was targeted at a single lower-level FBI agent; the file indicates no evidence of

26   wrongdoing on the part of the targeted agent or the FBI investigators; and there is little or

27   no public interest served by disclosure of this isolated file."  See id. at 290; see also Schiffer

28   v. FBI, 78 F.3d 1405, 1410-11 (9th Cir. 1996) (holding FBI records concerning investigation

14

1    of plaintiff were exempt from disclosure under Exemption 7(C) where persons named in

2    requested documents had strong privacy interest in not being associated with alleged

3    criminal activity and plaintiff made no showing of FBI wrongdoing during investigation);

4    Jefferson, 284 F.3d at 180 (holding OPR law enforcement records relating to investigation

5    into destruction of documents by Assistant United States Attorney exempt from disclosure

6    under Exemption 7(C)).  Here, likewise, the FOIA request is not directed to information

7    about a high level official; the records before the Court state that no misconduct occurred;

8    and, consequently, there is little or no public interest served by disclosure in light of the

9    privacy rights of the individuals involved in the investigation.  Accordingly, Exemption 7(C)

10   is applicable.

11        The Court further finds the Vaughn index submitted by defendants is adequately

12   detailed in light of the privacy interests at stake.  As noted, the purpose of the Vaughn

13   index is to afford the person making a FOIA request a meaningful opportunity to contest the

14   soundness of the withholding, and the agency must disclose "as much information as

15   possible without thwarting the claimed exemption's purpose."  See Wiener, 943 F.2d at

16   977.  Thus, the only reason to require additional detail in the Vaughn index is to afford Odle

17   an opportunity to argue that with appropriate redactions, more information could and should

18   have been produced.  See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a

19   record shall be provided to any person requesting such record after deletion of the portions

20   which are exempt[.]").  In Hunt, however, the Ninth Circuit held that the district court erred

21   in ordering production of a redacted version of the investigative file at issue therein,

22   holding: "Because [the plaintiff's] FOIA request sought access to a single file that contained

23   information about one particular agent, disclosure of any material contents of this file,

24   coupled with the public availability of [the plaintiff's] FOIA request naming the agent, would

25   make redaction of the file a pointless exercise."  See Hunt, 972 F.2d at 288.  The Ninth

26   Circuit concluded:  "The file cannot be redacted and disclosed without the risk of subjecting

27   that agent to undeserved embarrassment and attention."  See id. at 289.  Odle likewise

28   seeks a single investigative file concerning readily identifiable persons.  For the same

15

1   reasons set forth in Hunt, redaction would not protect the privacy interests of the persons

2   involved.  Accordingly, the Court finds the Vaughn index was adequately detailed for

3   purposes of evaluating defendants' claim that documents should be withheld, in whole or in

4   part, pursuant to Exemption 7(C).

5          Odle argues that even if the documents at issue otherwise would be properly

6   withheld from disclosure, they nonetheless must be disclosed because Dr. Martell's

7   involvement in the Spivey case is a matter of public knowledge.  Odle points out that Dr.

8   Martell's role in Spivey was the subject of contemporaneous news stories, (see Forbes

9   Decl. Exs. K-M), that Dr. Martell has testified about the matter on the record in other cases,

10  (see id. Exs. N-Q), and that the DOJ has "request[ed] that Dr. Martell disclose to all

11  prosecutors with whom he may be working his understanding of the events that took place

12  in the Spivey case." (See id. Ex. C (letter dated July 1, 1997 from Kevin V. Di Gregory,

13  Deputy Assistant Attorney General, to Martell's counsel, Roger M. Adelman)).  Both the

14  Supreme Court and the Ninth Circuit, however, have rejected the argument that some

15  public disclosure of information eliminates any privacy interest in further disclosure.  See

16  Reporters Committee, 489 U.S. at 770, 780 (holding FBI "rap sheets" categorically

17  excluded from disclosure under Exemption 7(C); noting "the fact that an event is not wholly

18  private does not mean that an individual has no interest in limiting disclosure or

19  dissemination of the information"); Schiffer, 78 F.3d at 1410-11 (rejecting argument that

20  because much of requested information was made public during related civil suit, privacy

21  interests were diminished); Kimberlin, 139 F.3d at 949 (holding person who acknowledged

22  to press he was investigated and disciplined by OPR nonetheless had privacy interest "in

23  avoiding disclosure of the details of the investigation, of his misconduct, and of his

24  punishment"); see also United States Department of Defense v. FLRA, 510 U.S. 487, 500

25  (1994) (noting, in discussing Exemption 6, "[a]n individual's interest in controlling the

26  dissemination of information regarding personal matters does not dissolve simply because

27  that information may be available to the public in some form").  Moreover, the Privacy Act

28  requires that the government not disclose any records about Dr. Martell that are subject to

1    withholding under FOIA, unless Dr. Martell has given his written consent, or unless a

2    specific exception to the Privacy Act applies.  See 5 U.S.C. § 552a(b); see also United

3    States Dept. of Defense v. Federal Labor Relations Authority, 510 U.S. at 502 (noting

4    Privacy Act governs where FOIA exemption applies).  There is no evidence that Odle has

5    obtained and submitted to the government such written consent from Dr. Martell, and Odle

6    does not argue that any of the enumerated exceptions to the Privacy Act apply under the

7    circumstances presented here.

8         For the reasons stated above, the privacy interests at issue with respect to the

9    documents withheld by defendants under Exemption 7(C) outweigh the public interest in

10   disclosure thereof.  Accordingly, the Court finds defendants properly withheld from

11   disclosure all documents withheld pursuant to Exemption 7(C).

12        **C.  Exemption 6**

13        FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar

14   files the disclosure of which would constitute a clearly unwarranted invasion of personal

15   privacy."  See 5 U.S.C. § 552(b)(6).  Here, defendants asserted Exemption 6 as the basis

16   for withholding the same documents they withheld under Exemption 7(C).  (See Hall Decl.

17   Ex. U; Boseker Decl. Ex. B.)  As the Court has held the documents at issue were properly

18   withheld under Exemption 7(c), the Court does not reach defendants' additional arguments

19   for withholding such documents under Exemption 6.[7]

20        **D.  Exemption 5**

21        FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency

22   memorandums or letters which would not be available by law to a party other than an

23   agency in litigation with the agency."  See 5 U.S.C. § 552(b)(5).  Exemption 5 "withholds

24   from a member of the public documents which a private party could not discover in litigation

25   with the agency," and thus "exempt[s] those documents, and only those documents,

26

27        [7] The Court notes the standard for withholding documents under Exemption 6 is
     more stringent than the standard for withholding under Exemption 7(C).  See Reporters
28   Committee, 489 U.S. at 756.

17

normally privileged in the civil discovery context," including documents privileged from disclosure pursuant to the executive privilege[8] and the "attorney-client and attorney work-product privileges generally available to all litigants." See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975); see also Maricopa Audobon Society v. United States Forest Service, 108 F.3d 1089, 1092 (9th Cir. 1997) (noting Exemption 5 "covers the attorney-client privilege, the attorney work-product privilege, and the executive 'deliberative process' privilege").

The majority of the documents withheld in whole or in part pursuant to Exemption 5 also were withheld pursuant to Exemption 7(C). (See Hall Decl. Ex. U; Boseker Decl. Ex. B.) As discussed above, the Court has found the government's withholding of documents under Exemption 7(C) to be appropriate. The only material withheld under Exemption 5 and not under Exemption 7(C) constitutes portions of two documents, specifically, OPR-19 and OPR-1538. (See Motion at 21 n.18, and Hall Decl. Ex. U at 3, 25.) Hall attests that all documents withheld by OPR under Exemption 5 were withheld from disclosure on the ground they fall within the scope of the deliberative process privilege. (See Hall Decl. ¶ 51.)

OPR-19 is Dr. Martell's affidavit, filed April 11, 1997 in the Spivey action, in connection with the government's opposition to Spivey's motion for a Kastigar[9] hearing. (See Hall Decl. Ex. U at 3.) Defendants produced this document to Odle, but state, in the Vaughn index, that they have redacted therefrom "an attorney note with an analysis of information contained in the affidavit that would reveal the attorney's thought process." (See id. at 1, 3.) Defendants further state "[d]isclosure would harm OPR's deliberative process by revealing the investigative process used by OPR attorneys to analyze and select relevant investigative information obtained from subjects, complainants and

---

[8] The "executive privilege" also is referred to as the "deliberative process privilege." See Department of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

[9] See Kastigar v. United States, 406 U.S. 441 (1972).

witnesses." (See id. at 3.)

OPR-1538 is a May 7, 1997 Albuquerque Journal article titled "Deal Ends Death-Penalty Case." (See Hall Decl. Ex. U at 25.) Defendants produced the article to Odle, but state, in the Vaughn index, that they redacted "an attorney's handwritten note regarding the attorney's analysis of the news article as it relates to OPR's investigation." (See id. at 1, 25.) Defendants further state "[d]isclosure of this information would harm OPR deliberative process by revealing the OPR attorney's thought process and analysis of potential investigative information." (See id. at 25.)

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." See Klamath Water Users, 532 U.S. at 8 (internal quotation and citation omitted). To fall within the scope of the privilege, the source of the document must be a government agency, see id., and "the materials in question must be 'predecisional' in nature and must also form part of the agency's 'deliberative process.'" See Maricopa, 108 F.3d at 1093 (emphasis in original).

A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." See id. (internal quotation and citation omitted). Defendants, in order to meet their burden of demonstrating a document is within the scope of the deliberative process privilege "must identify a specific decision to which the document is predecisional." See id. at 1094. It is not necessary, however, that the Court be able to "identify the actual decision that was made." See id.

A predecisional document is part of the deliberative process if disclosure of the document "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." See id. (internal quotation and citation omitted).

19

Here, because it is undisputed that the notes on OPR-19 and OPR-1538 were made by OPR attorneys, (see Hall Decl. ¶ 51 and Ex. U at 3, 25), defendants have adequately demonstrated the source of the notes was a government agency.  Likewise, the notes in question are "predecisional"; it is undisputed they were made in connection with OPR's investigation in the Spivey matter, which resulted in a final report containing "findings, analysis and recommendations pertaining to the employee(s) of the United States Attorney's Office . . . that were the subject(s) of the investigation."  (See Hall Decl. ¶¶ 25, 44, 48; Hall Supp. Decl. ¶ 15.)  Finally, disclosure of any notes made during the investigation would discourage candid discussion within the agency, and thus interfere with the agency's ability to perform its functions.  As Hall notes, disclosure of such material "would harm OPR's deliberative process by revealing: the OPR attorneys' thought process; the investigative process used by OPR attorneys to analyze and select relevant investigative information; potential investigative strategies; the OPR attorneys' recommendations; the OPR attorneys' methods for preparing and compiling investigative information; [and] the OPR attorneys' willingness to document their thoughts and impressions would be chilled, and potentially impede the free flow of advice between OPR's subordinate and supervisory staff." (See Hall Decl. ¶ 51); see also NLRB v. Sears, Roebuck & Co., 421 U.S. at 150 ("[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process"); Klamath Water Users, 532 U.S. at 8-9 (noting "deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news").

Accordingly, the Court finds the notes in question are within the scope of the deliberative process privilege and, consequently, were properly redacted pursuant to Exemption 5.

**E.  Exemption 2**

1    FOIA Exemption 2 exempts from disclosure "matters that are . . . related solely to

2  the internal personnel rules and practices of an agency."  See 5 U.S.C. § 552(b)(2).

3  Defendants attest they withheld, pursuant to Exemption 2, "non-public OPR fax numbers

4  and telephone numbers" and "OPR case file numbers contained in internal OPR Incoming

5  Coversheets, which document incoming correspondence," as well as "location codes,

6  allegation codes and computer pathnames that are used to access OPR's computerized

7  databases."  (See Hall Decl. ¶¶ 48(e)(i) and (ii), 48(f)(i), 50.)  Under Exemption 2, the

8  government may withhold from disclosure, inter alia, "routine matters of merely internal

9  interest."  See Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073

10  (D.C. Cir. 1981) (internal quotation and citation omitted).

11    Odle states, in his opposition, that he does not contest defendants' invocation of

12  Exemption 2 "to support discrete redactions of such numbers and codes."  (See Opp. at 7.)

13  Odle argues, however, that defendants cannot rely on Exemption 2 to justify the

14  withholding of entire documents, "given the obvious segregability of such information."

15  (See id.)

16    No document has been withheld in its entirety solely pursuant to Exemption 2,

17  however.  Although Exemption 2 was cited as one basis for withholding numerous

18  documents, for each such document that was withheld in full, defendants also invoked

19  Exemption 7(C).  (See Hall Decl. Ex. U at 40, 41, 43, 54, 78, 80-101, 104-105, 110-116,

20  137, 140-141.)  As discussed above, the Court has found defendants' nondisclosure of

21  documents pursuant to Exemption 7(C) to be appropriate.  Defendants' reliance on

22  Exemption 2 as providing an additional basis for withholding various internal telephone

23  numbers and codes from said documents likewise was appropriate, as Odle has conceded.

24  **F.  Exemption 7(D)**

25    FOIA Exemption 7(D) exempts from disclosure "records or information compiled for

26  law enforcement purposes, but only to the extent that the production of such law

27  enforcement records or information . . . could reasonably be expected to disclose the

28

21

identity of a confidential source, including a State, local, or foreign agency or authority or

any private institution which furnished information on a confidential basis, and, in the case

of a record or information compiled by criminal law enforcement authority in the course of a

criminal investigation or by an agency conducting a lawful national security intelligence

investigation, information furnished by a confidential source."  See 5 U.S.C. § 552(b)(7)(D).

Only EOUSA has relied on Exemption 7(D).  (See Boseker Decl. Ex. B.)  In every

instance in which EOUSA has relied on Exemption 7(D), it also has relied on Exemption

7(C).  (See id.)  As the Court has found defendants' nondisclosure of documents pursuant

to Exemption 7(C) to be appropriate, the Court does not address EOUSA's additional

citation to Exemption 7(D) as a basis for withholding the same documents from disclosure.

**F.  Sealing Orders**

Lastly, defendants state that ten pages of OPR's Report of Investigation (OPR-356)

were withheld from disclosure because of two sealing orders entered in Commonwealth of

Virginia v. Atkins, No. CR-03-R2-8229-01 (Va. Cir. Ct.).  (See Hall Decl. ¶¶ 42, 48(e)(vii),

56 and Ex. U at 12.)  One of the two sealing orders provides: "[T]he Court having reviewed

in camera the Department of Justice report in the company of the Attorney for the

Defendant and the Commonwealth's Attorney, ORDERS the Department of Justice records

(Defense Exhibit #25) be SEALED, and will not allow Attorneys for the defendant to

examine Dr. Daniel A. Martell regarding said records."  (See Hall Decl., filed September 9,

2005, Ex. 1 at 1.)  The second sealing order provides for sealing of a portion of the trial

transcript.  (See id.)  As nothing in either order even suggests, let alone requires,

defendants to refrain from disclosing the Report of Investigation in response to a FOIA

request, defendants' reliance on the Atkins sealing orders as a basis for withholding

portions of such report is unwarranted.

All of the information withheld pursuant to the Atkins sealing orders, however, also

was withheld pursuant to Exemption 7(C).  (See Hall Decl. Ex. U at 11-12; see also Forbes

Decl. Ex. F (redacted Report of Investigation) at 70.)  As the Court has found defendants'

22

nondisclosure of documents pursuant to Exemption 7(C) to be appropriate, Odle has

suffered no harm by reason of defendants' reliance on the <u>Atkins</u> sealing orders as an

additional basis for such nondisclosure.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is hereby

GRANTED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 17, 2006

MAXINE M. CHESNEY
United States District Judge

23